UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER BROWN,

      Plaintiff,

   v.

AMAZON.COM SERVICES LLC,

      Defendant.

_____

**DECISION AND ORDER**

6:24-CV-06158 EAW

## <u>INTRODUCTION</u>

*Pro se* plaintiff Christopher Brown ("Plaintiff") filed this action against defendant Amazon LLC, alleging both federal and state law violations.[1]  (Dkt. 19 at ¶¶ 62-129).  On May 16, 2024, Plaintiff filed an amended complaint that instead named Amazon.com Services, LLC ("Defendant") as defendant.  (Dkt. 19).

Presently before the Court is Defendant's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 28) and Plaintiff's motion for miscellaneous relief (Dkt. 36).  For the following reasons, Defendant's motion to dismiss

---

[1] Plaintiff has filed many lawsuits in this Court.  *See Brown v. Amazon.com Services LLC*, 6:24-CV-06730 EAW (W.D.N.Y. Dec. 17, 2024); *Brown v. Dep't of Lab.*, 6:23-CV-06680 EAW (W.D.N.Y. Nov. 30, 2023); *Brown v. Jeremiah's Comput. Store*, 6:23-CV-06673 EAW (W.D.N.Y. Nov. 29, 2023); *Brown v. AT&T, et al.*, 6:23-CV-06592 EAW (W.D.N.Y. Oct. 12, 2023); *Brown v. T-Mobile*, 6:23-CV-06588 EAW (W.D.N.Y. Oct. 11, 2023); *Brown v. Allied Universal, et al.*, 6:23-CV-06587 EAW (W.D.N.Y. Oct. 11, 2023); *Brown v. Dolco Commodore, et al.*, 6:23-CV-06582 EAW (W.D.N.Y. Oct. 6, 2023); *Brown v. Allied Universal*, 6:23-CV-06581 EAW (W.D.N.Y. Oct. 6, 2023); *Brown v. Securitas*, 6:23-CV-06572 EAW (W.D.N.Y. Oct. 3, 2023); *Brown v. AT&T*, 6:23-CV-06571 EAW (W.D.N.Y. Oct. 3, 2023); *Brown v. Digit. Forensics Corp.*, 6:23-CV-06566 EAW (W.D.N.Y. Oct. 2, 2023); *Brown v. Verizon*, 6:23-CV-06242 EAW (W.D.N.Y. May 3, 2023).

the amended complaint (Dkt. 28) is granted and Plaintiff's motion for miscellaneous relief

(Dkt. 36) is denied.  Because of his *pro se* status, Plaintiff is granted leave to file a second

amended complaint consistent with this Decision and Order within 30 days of its date.[2]

## BACKGROUND

### I.    Factual Background

The facts set forth herein are taken from Plaintiff's amended complaint.  (Dkt. 19).

Plaintiff was hired by Defendant at a compensation rate of "$17 per hour with a

supplemental rate of approximately $2.60."  (*Id.* at ¶¶ 7-8).  Plaintiff began work on May

28, 2024, and several representations were made to him regarding the compensation scale

and benefits.  (*Id.* at ¶ 11).  Plaintiff claims he sought a job at Defendant's "place of

business for one purpose and one purpose only[:] to figure out why his younger sister was

not being properly compensated for the amount of hours in which she was working."  (*Id.*

at ¶ 13).

Plaintiff alleges he signed up for overtime through an online portal and was "never

compensated properly in accordance with the online representation by" Defendant.  (*Id.* at

¶ 15).  Plaintiff states acceptance of the overtime payment would result in a "lightning bolt"

appearing next to his pay.  (*Id.* at ¶ 17).  While Plaintiff should have received between $170

---

[2]    Plaintiff has attached numerous exhibits to the amended complaint but many of those exhibits have no apparent relation to the allegations contained in the amended complaint and there is no reference to the exhibits within the body of the amended complaint.  Plaintiff is cautioned that any amended pleading should comply with, among other things, Federal Rule of Civil Procedure 8(a)(2)'s requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief" and he should explain the purported relevance of any exhibits in the body of the amended pleading.

and $240, Plaintiff was not compensated at that rate. (*Id.*). Plaintiff discussed the compensation rate with other employees and discovered that they were not compensated by Defendant at the agreed-upon rate, resulting in the majority of them quitting or being terminated by Defendant. (*Id.* at ¶ 18). Plaintiff also alleges he did not receive any benefits. (*Id.* at ¶ 20).

On February 7, 2024, Plaintiff was hired by Defendant's "IT department." (*Id.* at ¶ 22). Plaintiff's compensation was supposed to be between $31,200 and $43,700. (*Id.* at ¶ 23). After speaking with Defendant's IT manager, Plaintiff believed he would also receive overtime. (*Id.* at ¶ 24). But Plaintiff ended up earning less than his original position and his pay decreased to between $600 and $750 weekly. (*Id.* at ¶¶ 30-31).

Plaintiff alleges that Defendant's security guards would force Plaintiff to remove religious garments and clock him into work late. (*Id.* at ¶ 33).

Plaintiff suffered an injury while off-the-clock wearing Defendant's authorized work shoes. (*Id.* at ¶ 35). Plaintiff was forced to continue wearing these work shoes, which harmed Plaintiff's ability to walk and resulted in a broken foot and ruptured tendon. (*Id.*). Plaintiff alleges that Defendant ignored Plaintiff's request for accommodations. (*Id.* at ¶ 36).

Plaintiff also claims that after filing suit against Defendant, he was removed from his position, his compensation was changed, the number of hours and days in which Plaintiff worked was changed, he endured reputational abuse, he suffered emotional stress, and his preexisting injury was aggravated. (*Id.* at ¶ 34).

Plaintiff alleges that Defendant's employees would "attempt to intimidate, threaten, harass, and [] try to ensure fights with [P]laintiff," but that such employees were removed by Defendant. (*Id.* at ¶ 39). Plaintiff contends that Defendant's employees tried to "start a disciplinary paperwork trail" against Plaintiff. (*Id.* at ¶ 40).

Plaintiff met with several female employees. (*Id.* at ¶ 46). One female stated she had "to f to work [sic]," one "threw up her gang sign," and another "attempt[ed] to perform sexual favors for" Plaintiff. (*Id.* at ¶¶ 46-47, 49). On a separate occasion, Plaintiff went to fix an employee's work laptop and the employee "move[d] their head towards the [P]laintiff['s] genital area" and stated that they could have sexual relations. (*Id.* at ¶¶ 53-54). Plaintiff replied that "such is not needed for [P]laintiff to perform the requirements of his job." (*Id.* at ¶ 55).

Plaintiff also believes that Defendant's employees are "under an internal investigation due to a multitude of equipment just going missing from certain departments." (*Id.* at ¶ 57).

Plaintiff seeks $20,000,000 from Defendant. (*Id.* at 2).

## II.    <u>Procedural Background</u>

Plaintiff filed this action on March 15, 2024. (Dkt. 1). On May 3, 2024, Defendant filed a motion to dismiss (Dkt. 16), which was denied as moot (Dkt. 22) because Plaintiff filed an amended complaint on May 16, 2024 (Dkt. 19). Defendant moved to dismiss the amended complaint on June 28, 2024. (Dkt. 28). In accordance with the scheduling order issued by the Court (Dkt. 29), Plaintiff submitted a response in opposition to the motion (Dkt. 31) and Defendant replied (Dkt. 41). Plaintiff then submitted an untimely letter

purportedly in further opposition to the motion to dismiss. (Dkt. 39). Also, on July 31, 2024, Plaintiff filed a motion for miscellaneous relief (Dkt. 36) to which Defendant responded (Dkt. 37).[3]

## DISCUSSION

### I.    Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[3]    In Plaintiff's motion for miscellaneous relief, Plaintiff requests permission to engage in discovery of third-party sources. (Dkt. 36 at ¶ 1). Plaintiff's motion for miscellaneous relief is essentially a motion for reconsideration of the Court's July 22, 2024 Text Order which granted Defendant's motion to stay discovery and restrict service of documents. (Dkt. 34). Plaintiff's motion for miscellaneous relief is denied.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally.").

## II.    <u>FLSA Overtime Violations—Plaintiff's First Cause of Action</u>

Plaintiff's first cause of action contends that Defendant failed to compensate him for overtime in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). (Dkt. 19 at ¶¶ 62-71). Defendant argues that the claim must be dismissed because Plaintiff provided no detail about the overtime that allegedly went unpaid and, in his exhibits attached to the amended complaint, it is clear that Defendant paid overtime. (Dkt. 28-12 at 13-14). Defendant made the same argument directed to Plaintiff's original complaint (Dkt. 16-1 at 10-11), and in response, Plaintiff filed the amended complaint.

"In an action to recover unpaid overtime wages under FLSA, a plaintiff must show that: '(1) he was an employee who was eligible for overtime ([*i.e.,*] not exempt from the

Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated.'" *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 507 (E.D.N.Y. 2011) (quoting *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009)). "To plead a plausible FLSA overtime claim, Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *see also Herrara v. Comme des Garsons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023) ("[P]laintiffs must plead FLSA overtime claims with 'specificity.'").

Plaintiff has failed to plausibly allege that he worked overtime hours for which he was not compensated. Plaintiff has not provided enough detail about the length and frequency of his unpaid work. Instead, Plaintiff broadly asserts that he signed up for overtime through an online portal and was "never compensated properly in accordance with the online representation by" Defendant. (Dkt. 19 at ¶ 15). To support this allegation, Plaintiff attaches his payroll documents. (Dkt. 19-4 at 16-34). But as Defendant points out (Dkt. 28-12 at 14), those documents show Plaintiff received overtime pay (Dkt. 19-4 at 16-34). Thus, Plaintiff has failed to allege a violation of overtime pay under the FLSA. Because Plaintiff has already attempted to amend this claim, the dismissal of the FLSA overtime cause of action is with prejudice and without leave to amend. *Baptiste v. Doe*, 680 F. Supp. 3d 186, 192 (N.D.N.Y. 2023) ("[A]n opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend.").

### III.    FLSA "Straight Pay" Violations—Second Cause of Action

Plaintiff's second cause of action alleges "straight pay violations" of the FLSA. (Dkt. 19 at ¶¶ 72-76). But as Defendant correctly argues (Dkt. 28-12 at 14-15), Plaintiff's allegations that he was not paid for the time worked—unrelated to any allegations of failure to pay the minimum wage—does not state an FLSA violation.

"The FLSA requires certain employers to pay a minimum wage and to provide overtime pay for work exceeding forty hours per week." *Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 146 (E.D.N.Y. 2023) (quoting *Ilyina v. Fantasy Lake Resort, Inc.*, No. 19-CV-4845, 2022 WL 16855879, at *2 (E.D.N.Y. Nov. 10, 2022)). But the FLSA "is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold." *Nakahata*, 723 F.3d at 201.

Plaintiff does not allege that Defendant failed to pay a minimum wage. Instead, he appears to be alleging that he was not paid for time worked under 40 hours a week because of errors with the time clock,[4] but this does not state an FLSA claim. Because Defendant's initial motion to dismiss directed to Plaintiff's original complaint raised this very issue (Dkt. 16-1 at 9-10), and Plaintiff failed to correct the deficiencies with his amended complaint, this cause of action is dismissed with prejudice and without leave to replead.

---

[4]    In his response to Defendant's motion to dismiss, Plaintiff argues that Defendant altered or changed "evidence after the filing of [the] lawsuit." (Dkt. 31 at 2). The document Plaintiff attaches in support of this argument appears to be a filing reporting "a missed punch" and changes to punch times in February 2024. (*Id.* at 22-24). But, as Defendant notes, the documents "do[] not support a claim that [Defendant] paid Plaintiff less than minimum wage or failed to pay him any overtime wages that were owed to him." (Dkt. 41 at 6). Instead, the filing appears to be an inquiry into the procedures for proper time keeping and do not show that Plaintiff was not appropriately paid. (*See* Dkt. 31 at 22-24).

IV.    **FLSA Retaliation—Third Cause of Action**

Plaintiff's third cause of action alleges that he was subject to retaliation after he filed this suit against Defendant because Defendant removed Plaintiff from his position of employment, attempted to injure Plaintiff by forcing him to stand for long periods of time when he had a foot injury for which he sought accommodations, refused to let him work overtime, did not offer him any training, and subjected him to discrimination and harassment in violation of the FLSA.  (Dkt. 19 at ¶¶ 77-85).  Defendant states that Plaintiff's FLSA retaliation claim should be dismissed because Plaintiff's amended complaint discusses internal complaints that are not specific enough to allow Defendant to determine whether Plaintiff was complaining about a violation of the FLSA, none of Defendant's actions would have dissuaded a reasonable employee from making an FLSA claim, and Plaintiff does not establish a causal connection.  (Dkt. 28-12 at 16-17).  Defendant also argues that the alleged retaliatory action occurred before the protected activity.  (Dkt. 41 at 7).

"To establish a *prima facie* claim of retaliation under the FLSA . . . , a plaintiff must show: '(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'"  *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013) (quoting *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010)).  But, at the pleading stage, "courts 'generally assess[ ] the plausibility of [the plaintiff's] claim based on the facts alleged in the [complaint].'"

*Galante v. Watermark Servs. IV, LLC*, 722 F. Supp. 3d 170, 178 (W.D.N.Y. 2024) (citation omitted).

Although Plaintiff has alleged that Defendant took several adverse employment actions against him in retaliation for filing this action, most of the alleged retaliatory action appears to have occurred before Plaintiff filed this lawsuit. Indeed, based on the amended complaint, it appears the only adverse employment action taken after filing the lawsuit was Plaintiff's placement in an alternate employment position. (Dkt. 19 at ¶ 34). Plaintiff does not explain the nature of this alternate employment position so as to gauge whether it constituted an adverse employment action. *Shaffer v. IEP Techs., LLC*, 557 F. Supp. 3d 191, 206 (D. Mass. 2021) ("Whether a reassignment constitutes an adverse employment action depends upon all of the circumstances viewed from the perspective of a reasonable person in the plaintiff's position.") (internal quotation marks and citation omitted); *Porter v. Roosa*, 259 F. Supp. 2d 638, 657 (S.D. Ohio 2003) ("when citing a change in work duties as one's adverse employment action, the plaintiff must demonstrate that []he experienced significantly diminished material responsibilities, and that the alleged change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities") (internal quotation marks omitted).

As a result, Plaintiff has failed to plausibly allege an FLSA retaliation claim. However, because the amended complaint represented Plaintiff's first attempt to plead such a claim, and because the Court cannot conclude that Plaintiff could not assert such a claim with more detailed factual allegations, the dismissal is without prejudice and with leave to replead.

## V.    <u>Forced Labor—Seventh Cause of Action</u>

Plaintiff's seventh cause of action claims that he will be subject to termination by Defendant if he does not perform his work duties in violation of the Thirteenth Amendment. (Dkt. 19 at ¶ 113).  Plaintiff further explains that he has been threatened with people using their fingers to simulate a gun, that he is forced to stand 13 hours to perform his work duties, and that he is monitored because of his use of Defendant's "twitch services."  (*Id.* at ¶¶ 111-118).  Plaintiff cites to 18 U.S.C. § 1589 in support of this claim.  (Dkt. 31 at ¶¶ 26-29).  Defendant argues that Plaintiff has not alleged any facts to support a claim that Defendant intentionally schemed to lead Plaintiff to believe that a failure to perform work for Defendant would result in serious harm or physical restraint.  (Dkt. 41 at 11).

18 U.S.C. § 1589 proscribes obtaining labor or services of a person by any of the following:  "(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint. . . ."  18 U.S.C. § 1595(a) provides a private right of action to "an[y] individual who is a victim of a violation of [18 U.S.C. § 1589]."  *Baldia v. RN Express Staffing Registry LLC*, 633 F. Supp. 3d 693, 703 (S.D.N.Y. 2022).  "'[T]he fundamental purpose of § 1589 is to reach cases of servitude achieved through nonviolent coercion – namely serious harm, the threat of serious harm, or the abuse or threatened abuse of legal process.'"  *Id.* at 704 (citation omitted).

- 11 -

Plaintiff has not alleged facts sufficient to state a plausible violation of § 1589. However, because of Plaintiff's *pro se* status and because he has not previously been afforded an opportunity to attempt to amend this claim, the cause of action is dismissed without prejudice and with leave to replead.

## VI.   <u>ADA Claim</u>

Although not pleaded as a separate cause of action, Plaintiff's amended complaint appears to assert allegations that he suffered a foot injury, requested accommodations from Defendant for that injury, and was denied or ignored in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA").  (Dkt. 19 at ¶¶ 35-38).  Defendant argues that Plaintiff failed to exhaust his administrative remedies before filing his amended complaint.  (Dkt. 28-12 at 18).  Defendant also notes that Plaintiff has not alleged that he has a disability under the ADA, that Defendant was aware of the disability, and that Plaintiff needed a reasonable accommodation to perform his job which Defendant refused to make. (*Id.* at 19 n.8).

"'[A] plaintiff seeking to bring a claim pursuant to the [ADA] . . . must exhaust administrative remedies through,' . . . the Equal Employment Opportunity Commission [("EEOC")]."  *Spillers v. N.Y. City Health & Hosps. Corp.*, 763 F. App'x 138, 139 (2d Cir. 2019) (quoting *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018)).  "To make out a *prima facie* failure to accommodate claim, a plaintiff must show that: (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4)

the employer has refused to make such accommodations." *Gomez v. N.Y. City Police Dep't*, 191 F. Supp. 3d 293, 301 (S.D.N.Y. 2016) (citing *McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013)); *Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 398 (E.D.N.Y. 2016) ("A plaintiff can state a claim for employment discrimination premised on an employer's failure to accommodate her disability by alleging facts showing that: (1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.") (internal quotation marks and citation omitted). "The ADA's definition of disability may be satisfied if a plaintiff demonstrates 'a record' of an impairment that substantially limits one or more major life activities." *Levine v. Smithtown Cent. Sch. Dist.*, 565 F. Supp. 2d 407, 425 (E.D.N.Y. 2008) (citing 42 U.S.C. § 12102(2)(B)).

Here, it does not appear that Plaintiff obtained a right to sue letter from the EEOC.[5] In addition, Plaintiff's allegations are so sparse that he has failed to plausibly allege a failure to accommodate claim, including by failing to allege that he qualifies as a person with a disability under the meaning of the ADA. *See*, *e.g.*, *Earl v. Good Samaritan Hosp.*

---

[5]    Plaintiff appears to have filed some documentation with the EEOC (Dkt. 19-6 at 5-20; *see also* Dkt. 42), but the status of those proceedings is unclear. If Plaintiff attempts to replead this cause of action, he should clarify whether he filed a charge with the EEOC, what it alleged, and whether he obtained a right to sue letter. While the Court recognizes that failure to exhaust is an affirmative defense, Defendant appears to have established the applicability of that defense based on the allegations in the amended complaint and documents attached thereto.

*of Suffern NY*, 625 F. Supp. 3d 292, 306 (S.D.N.Y. 2022), *aff'd*, No. 22-2505-CV, 2023 WL 8708417 (2d Cir. Dec. 18, 2023) ("Plaintiff's bare allegations that these impairments now make certain tasks 'arduous' or 'difficult' fail to sufficiently establish, first, that these activities are major life activities, and second, how these activities are substantially limited in comparison to the average person."); *Bush v. Donahoe*, 964 F. Supp. 2d 401, 420 (W.D. Pa. 2013) ("Plaintiff describes her condition with so few details that the court cannot infer whether the activity limited by plaintiff's impairment is a major life activity or whether plaintiff's impairment substantially limits a major life activity.").  Therefore, Plaintiff's ADA claim is dismissed, though without prejudice and with leave to replead.

## VII.    <u>Remaining State Law Causes of Action</u>

Plaintiff's amended complaint alleges several state-law claims including conversion through wage theft (fourth cause of action), fraudulent inducement to employment contract (fifth cause of action), spoliation of evidence (sixth cause of action), civil conspiracy (eighth cause of action), and arguably a breach of contract claim, though not expressly pleaded as such.  (Dkt. 19 at ¶¶ 86-110, 119-129).  Defendant argues that the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims because all of Plaintiff's federal claims are subject to dismissal.  (Dkt. 28-12 at 21).

A district court has discretion to hear state-law claims where the relationship between a plaintiff's federal and state claims present "but one constitutional case" and "derive from a common nucleus of operative fact."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (internal quotation marks omitted).  When a federal court dismisses federal claims, the court may decline to exercise supplemental jurisdiction over the state-

law claims pursuant to 28 U.S.C. § 1367(c)(3).  *See also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

"Courts 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise' supplemental jurisdiction." *Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "Once all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination." *Id.* at 118 (citation omitted); *see also Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.") (internal quotation marks omitted).

Given the decision at this stage that all of Plaintiff's federal claims are subject to dismissal, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.  If Plaintiff successfully repleads any of the federal claims that have been dismissed without prejudice and with leave to replead, he may also replead the state causes of action, with two exceptions.

First, Plaintiff concedes that his fourth cause of action, conversion through wage theft, is not sustainable and withdraws the claim.  (*See* Dkt. 31 at ¶ 23 (Plaintiff "will drop the conversion" claim because "it [is] not permissible in the courts.")).  Accordingly,

Plaintiff's fourth claim for conversion through wage theft is dismissed with prejudice and may not be repleaded.

Second, Plaintiff's sixth claim for spoliation cannot stand as an independent cause of action. *See, e.g.*, *Farquharson v. Lafayette*, No. 19-CV-3446 (NSR), 2020 WL 1699985, at *12 (S.D.N.Y. Apr. 7, 2020) ("[A]lthough Plaintiff asserts a spoliation claim, New York does not recognize spoliation of evidence as an actionable tort."); *Perez v. Gen. Motors, LLC*, No. 1:15-CV-0240 GTS/CFH, 2015 WL 1823438, at *5 (N.D.N.Y. Apr. 21, 2015) ("[Spoliation] of evidence is not clearly recognized as a distinct cause of action under New York law. . . ."); *Sterbenz v. Attina*, 205 F. Supp. 2d 65, 71-72 (E.D.N.Y. 2002) ("[N]early every lower state court in New York to examine the issue, as well as decisions of federal courts construing New York law, have 'follow[ed] the majority view and do not recognize spoliation of evidence as a cognizable tort action.'" (citations omitted)). Therefore, because Plaintiff's claim for spoliation is not cognizable as a standalone claim, it is dismissed with prejudice and may not be repleaded.

As to the remaining state-law claims for fraudulent inducement to employment contract, civil conspiracy, and breach of contract, the Court declines to assess the viability of these claims at this stage given the procedural posture of this case.

## VIII.  <u>Leave to Amend</u>

As noted above, some of the causes of action have been dismissed without prejudice and with leave to replead.  Specifically, the FLSA retaliation cause of action, the claim of forced labor in violation of 18 U.S.C. § 1589, the ADA failure to accommodate claim, and the state law causes of action (other than the conversion claim which Plaintiff voluntarily

withdrew, and the spoliation of evidence claim which is plainly not viable). In his filings and in portions of his complaint, it appears that Plaintiff may be attempting to assert other causes of action, including potentially a claim for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* But at this stage, Plaintiff has failed to assert any such claims as a separately pleaded cause of action. If he desires to pursue any claim not specifically alleged in the amended complaint and addressed herein, he must seek leave of Court through formal motion practice that includes a proposed amended complaint.

As a result, Defendant's motion to dismiss is granted (Dkt. 28) but Plaintiff is granted leave to attempt to replead the following causes of action: FLSA retaliation, the claim of forced labor in violation of 18 U.S.C. § 1589, the ADA failure to accommodate claim, and the state law causes of action of fraudulent inducement to employment contract, civil conspiracy, and breach of contract. Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, Plaintiff's amended complaint must include all of his allegations, so that the amended complaint may stand alone as the sole complaint in this action which Defendant must answer.

## **CONCLUSION**

For the reasons discussed above, Defendant's motion to dismiss the amended complaint (Dkt. 28) is granted and Plaintiff's motion for miscellaneous relief (Dkt. 36) is denied.  Plaintiff may file a second amended complaint in accordance with this Decision and Order within **30 days** of the date hereof.  If Plaintiff fails to file a second amended complaint within that time, the Clerk of Court is directed to dismiss this case with prejudice and without further Order of the Court.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:          February 24, 2025
                    Rochester, New York

- 18 -